IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KEITH WOOD, 6821, )
    Petitioner, )
     )
    v. ) 2: 15-cv-1284
     )
MIKE WENEROWICZ, et al., )
    Respondents. )

MEMORANDUM and ORDER

    Keith Wood has presented a petition for a writ of habeas corpus.[1] For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Wood is presently serving an eighty to one hundred sixty years sentence imposed following his conviction of burglary, rape, indecent sexual intercourse, sexual assault, indecent assault, robbery resulting in serious bodily injury, terroristic threats, simple assault and robbery at Nos. CP-02-CR-2862-2007, CP-02-CR-12474-2007, CP-02-CR-12475-2007, CP-02-CR-12476-2007 and CP-02-CR-12477-2007 in the Court of Common Pleas of Allegheny County, Pennsylvania.[2] This sentence was imposed on September 12, 2008.[3]

    An appeal was taken to the Superior Court in which the issues presented were:

> I. Whether the trial court erred by denying the motion to exclude DNA evidence when the DNA Act is punitive in effect and since Mr. Wood committed the predicate crime of burglary prior to the 2002 DNA Act, the fact that he was required to provide a DNA sample pursuant to § 2316 constituted an impermissible *ex post facto*

---

[1] The petition was originally filed in the United States District Court for the Eastern District of Pennsylvania where the petitioner was incarcerated and transferred to this Court since Wood is challenging an Allegheny County conviction.
[2] In his reply brief (ECF No. 33) petitioner states that since he can only challenge one conviction in a habeas petition he is only challenging his conviction at CC200702862. While we recognize that Wood would relish the opportunity to file three additional petitions, his representation is in direct contradiction to his petition in which he sought to challenge all four of his convictions all of which were tried at the same time. In addition, we observe that, any further challenges Wood might pursue here could very well be timed barred 28 U.S.C. § 2244(d)(1). For this reason, we address all of his convictions as originally set forth in his petition. We also acknowledge that his reply brief is nothing more than a reiteration of the voluminous confusing issues raised in his original petition.
[3] See: Petition and answer of the Commonwealth.

violation and his DNA was unconstitutionally obtained and should
have been excluded from evidence?

II. Whether the verdicts were against the weight of the evidence when
Mr. Wood was convicted based solely on the DNA evidence but the
manner in which the Commonwealth handled the DNA and other
physical evidence was speculative, tenuous, and questionable at best
such that the verdicts were shocking to the judicial conscience?

III. Whether the trial court erred in sentencing Mr. Wood when it
considered improper factors and/or failed to consider all of the
required sentencing factors and the total aggregate sentence of not
less than 80 years, nor greater than 160 years incarceration amounts to
a *de facto* life sentence without the possibility of parole, which was an
abuse of discretion and is wholly unreasonable and manifestly
excessive?[4]

On January 25, 2011, the conviction was affirmed.[5] On August 10, 2011 leave to appeal was denied by the Pennsylvania Supreme Court.[6]

On May 12, 2012, Wood filed a post-conviction petition and relief was denied on September 24, 2013.[7] A pro se appeal was taken to the Superior Court in which Wood sought to raise 36 issues.[8] In response to these issues the Commonwealth argued:

To the extent appellant's 36 vague and undeveloped issues can be discerned, a
large number have been waived for failure to include them in the argument
portion of his brief. With respect to the issues contained in the argument section
those relating to the DNA evidence admitted at trial have been either previously
litigated on direct appeal or waived because they were phrased in terms of
prosecutorial misconduct or trial court error but not pursued on direct appeal.
Even if they had not been previously litigated or waived, appellant would not be
entitled to relief because these assertions are either wholly undeveloped or
without merit. Appellant's alleged **Batson** violation has been waived both for the
failure to raise it on direct appeal and for failing to offer any supporting argument
or reference to the record.[9]

---

[4] See: Appx. at p.160.
[5] Id. at pp. 271-290.
[6] Id at p 392.
[7] Id. at pp.11, 12.
[8] Id.at pp. 466-472.
[9] Id. at p. 503.

2

On February 4, 2015 the denial of post-conviction relief was affirmed.[10] In doing so the Superior Court specifically addressed the inordinate voluminous claims raised by the petitioner:

> We begin by noting that in his statements of questions involved, Wood has listed thirty-six issues. However, in the argument section of his brief, we discern discussion of only six distinct issues. Our law provides that an issue included in the statement of questions involved is waived when the appellant fails to develop an argument in support thereof. Accordingly, we will confine our review to the issues for which Wood has provided an argument. Furthermore, only five of these issues were included in, or fairly suggested by, Wood's Rule 1925(b) statement; thus our review is further limited to only these five issues. [Specifically, the Court addressed Wood's *Batson* issue; several issues challenging the effectiveness of counsel and an allegation of insufficient evidence to demonstrate that his DNA was found on the victims](internal citations omitted).[11]

Leave to appeal to the Pennsylvania Supreme Court was denied on June 30, 2015.[12]

In the instant petition executed on July 23, 2015 and filed in the Eastern District of Pennsylvania on August 7, 2015, petitioner attempts to raise a number of equally convoluted issues in a manner previously rejected by the Superior Court:

1. The Commonwealth forced DNA from petitioner without an order from the U.S. District Court; fully aware that petitioner was challenging the DNA statute on its face, as well as the Constitutionality of his confinement. And counsel was ineffective for not raising this issue and present[ing] evidence in this matter during pre-trial/trial and direct appeal; as well as failing to preserve issues. PCRA counsel was also ineffective for failing to present this issue once petitioner raised it in his PCRA causing petitioner prejudice and denied him a fair trial… Evidence was illegally obtained and petitioner was compelled to give evidence against himself. The U.S. District never relinquished jurisdiction of this issue; wherefore, petitioner's conviction is invalid.

2. Petitioner was targeted and profiled by the intentionally discriminatory application of laws in direct violation of the Equal Protection Clause of the U.S. Constitution. The probable cause arrest warrant was based on false and omitted information; as well as the search warrants petitioner's arrest was without probable

---
[10] Id. at pp. 513-521.
[11] Id. at pp.515-520.
[12] Id. at pp. 513-521, 563.

3

cause causing petitioner to be subjected to involuntary servitude
for convictions that are invalid because of the denial of Due
Process as well as counsel's failure to protect petitioner's rights
under the Equal Protection Clause of the U.S. Constitution. Chain
of custody; breach/gaps in the chain of custody, demonstrates that
the evidence was illegally obtained and never challenged by trial
counsel was ineffectiveness of counsel.

3. Egregious trial-court errors; trial court failed to "rule" on motions
in-limine; as to whether the DNA evidence was admissible or
inadmissible; rendering petitioner's conviction invalid. Causing
petitioner extreme prejudice throughout all trial proceedings.
Prejudice further ensued when trial-court made specific credibility
determinations "in the presence of the jury." Petitioner was denied
the right to inspect any of the evidence, as well as being denied
pre-DNA testing. Allowing the prosecution to misrepresent the
evidence.

    Trial court abused its discretion by giving a curative instruction
    rather than granting a mistrial when the prosecution
    mischaracterized the statistical significance of the DNA evidence.

    Trial [court] abused its discretion denying petitioner his right to
    know who the Commonwealth's witnesses were and what those
    witnesses were going to testify to prior to trial in order to prepare
    a defense. This prejudiced petitioner.

    Counsel was ineffective for not objecting to this; there was no
    reasonable basis for this and it was not reasonable trial court
    strategy.

    Trial court committed an egregious error when in an order from
    the judge stated that petitioner would be appointed counsel from
    the "Office of Conflict Counsel;" this turned [out] not to be true;
    Christopher Urbano was another attorney from the office of the
    public defenders' office. Petitioner was prejudiced by trial court's
    actions; and ineffectiveness and conflict of counsel ensued.
    Counsel prejudiced petitioner by his actions as well.

    Petitioner's Due Process was violated when trial [court] sentenced
    petitioner to 80-160 years, 4 20-40 year sentences to run
    consecutive. Petitioner is serving an illegal sentence.

    No motion was filed by the prosecution to try all cases together,
    counsel was ineffective for not objecting allowing the prosecution
    to do end-runs around the rules of court.

4

4. Suppression of forensic report dated February 9, 2006, that shows petitioner was "targeted" for the conviction of said crimes. It also shows that there was no probable cause for petitioner's arrest. His arrest was based on false information. This report was from Pamela J. Call, a forensic scientist of the PA. State Police, Greensburg, DNA Crime Lab. No hit or match was made and petitioner was released. No second DNA sample was ever collected.

   Suppression of surveillance footage from crime scenes that do not show petitioner. The prosecution also allowed their star witness, Thomas C. Myers give impeaching testimony by omitting that he was responsible for getting two men convicted for crimes that the Pennsylvania High Court stated that he along with the Pittsburgh police committed such an outrageous act that the judgments were arrested.

Victim was related to detective which goes to Commonwealth's motive. The Commonwealth never explained how a DNA sample was collected from petitioner February 12, 2007, or where that DNA sample came from. No warrant was issued for the DNA sample, petitioner was not [in] custody; [counsel was] ineffective for never objecting to the presentation of this testimony to the jury, and caused prejudice to the petitioner.

5. Petitioner was denied the right to confront the forensic scientist who performed the actual test that first exonerates petitioner and then, she states a year later that a direct DNA match was made without ever obtaining a second DNA sample that is required to make a direct DNA match. Trial/appellate and PCRA counsel were ineffective for failing to investigate/raise and preserve this issue during trial and for appeal; PCRA counsel refused to amend PCRA petition to include this issue.

Petitioner was also denied the right to compulsory process for obtaining witnesses in his favor, namely, his son who would have been an alibi witness, and failure to hire an expert witness, namely a forensic expert.

Conflict, prejudice & ineffectiveness is prevalent here; counsel told petitioner that he could not hire an expert because he did not have any money, and that the courts do not pay for defendants to hire experts. Petitioner has found this not to be true.

6. <u>Batson</u> violation.

Petitioner was denied a jury of his peers: when petitioner raised this issue he was told that the judge doesn't have time for this S!!!;  either pick from what's here or he would be taken down stairs and they would pick it for him. Denying petitioner the right to participate in jury selection. Petitioner

5

informed the trial court and counsel that he did not want juror #6; they, including counsel picked him anyway. He juror #6 turned out to be the jury foreman.

Petitioner then asked counsel why only "one" African American was on the jury. Her answer was "one" is enough.

Petitioner was denied his right to an impartial jury.

Petitioner was prejudiced by trial court and counsel as well as conflict of counsel and ineffectiveness of counsel.

7. Prosecutorial misconduct, prosecutorial vindictiveness, selective prosecution.

Stating that DNA was found in the victims was false. The taint of the description of the actual suspect so that petitioner would fit into the Commonwealth's scheme; suppressing information that their main suspect committed suicide [and] suppressing of the F.B.I. profile stating that the suspect was a Nigerian Nationalist.

Suppressed information favorable to petitioner, namely a report by Pamela J. Call a forensic scientist of the PA State Police Greensburg, DNA Laboratory. The victim being a relative of [one] of the detectives of the Allegheny County, who also acquired the probable cause arrest warrant based on false and or omitted information was suppressed shows the motive and the reason the Commonwealth schemed to get a conviction at any cost. The prosecutor supporting perjury/perjury by omission. Intentionally applying discriminatory law violated petitioner's right of the Equal Protection Clause. The prosecution's failure to correct the Commonwealth's witnesses while knowing that they mischaracterized the statistical significance of the DNA evidence [causing] petitioner extreme prejudice.[13]

The background to this prosecution is set forth in the January 25, 2011 Memorandum of the Superior Court citing the opinion of the trial court:

> The Commonwealth's evidence established that the first assault took place [during] the morning of June 26, 200[0], when 59-year-old M.H. awoke feeling as if someone were in her bedroom. She noticed a man standing at the foot of her bed, with what she later determined was her housecoat covering his face. He climbed on top of her, threatened to strike her and kill her when she tried to resist and then raped her. When he got off of her, he ordered her to lie on the floor and then left. M.H. called her daughter and was taken to Magee Hospital.

---

[13] See: Petition at ¶ 12.

The next attack occurred the very next day, in the early morning hours of June 27, 2000 when T.S., a 22-year-old law student, awoke in the middle of the night to find a man standing over her. He had one of her hats on his head and had his face concealed by a cloth of some sort. He held a butcher knife in his hand. She could see enough of his features, however, to determine that he was African-American, about 5'7" to 5'9" tall and in his late thirties or early forties. He told her that he had been watching her for some time, which she considered odd as she had just moved to Pittsburgh a few weeks previously. He raped her while holding a knife to her throat. When he left, he took approximately $40 from her purse. He told her to not call the police or he would be back with other "guys" and would "cut her."

At approximately 4:30 a.m. on July 9, 2000, A.I. was awoken suddenly by the presence of another person in her bedroom. She first thought that it was her boyfriend. When she realized it was not her boyfriend, she began to scream. The man jumped on top of her and subdued her by threatening to kill her. He then raped her. Although she was unable to identify the assailant, she believed that he was a black man in his thirties. Before leaving, he told her to lie on her stomach and face the wall. She laid there for several minutes, not moving until she heard her boyfriend's voice. Although he arrived minutes after [Appellant] left and went outside to look for him, he was not able to locate anyone. The victim was taken to the hospital. She later discovered the $15.00 was missing from her wallet.

On August 8, 2000, A.O., a physician serving her residency in Pittsburgh, was awakened in the middle of the night by the sensation of someone touching her right shoulder. After becoming more awake, she realized it was a man. She could not see his face, but could tell he was a black man in his thirties. When this individual began to remove her clothes, she fought him; kicking, trying to gouge his eyes and screaming for him to get off of her. The assailant was able to finally subdue her by choking her to the point that she lost consciousness. When she regained consciousness, she was being straddled by the man who then proceeded to rape her. During the rape, he struck her numerous times on the head because she refused to comply with his demands and continued to struggle with him. The assailant, in an attempt to remove biological evidence, wiped his semen from the victim with a scarf and then poured bleach on her. He told her that if she called the police, he would come back and kill her. During her interview with police, the victim recounted that the man attempted to fake an accent.

The final assault occurred on May 11, 2001, at the residence of M.T. She awoke at approximately 1:30 a.m., alerted by the presence of another person in the room. The man, in a heavily accented voice, told her to wake up. She noticed the man's face was covered up with a piece of her clothing. He proceeded to rape her while holding a screwdriver to her eye. After the rape, the assailant attempted to clean the victim. Before leaving, he told her to face away from him and to not call the police or he would kill her.

> In four of the assaults, biological material [was] left at the scene by the assailant. It was tested by the law enforcement and it was determined that the same man had been responsible for those assaults. Police were not, however, able to match the assailant's profile to any they had on file until 2007, when a DNA sample taken from [Appellant] after he had been incarcerated as a parole violator was determined to match. At trial, a serologist presented by the Commonwealth testified that there was only a 1 in 56 quintillion chance of someone having that particular DNA pattern matching that of [Appellant] (record reference omitted).[14]

Although petitioner attempts to set forth a myriad of disconnected unintelligible ranbling issues in support of his claim for relief here, as the Superior Court observed in reviewing the denial of post-conviction relief,

> We begin by noting that in his statement of questions involved, Wood has listed thirty-six issues. However, in the argument section of his brief, we discern discussion of only six distinct issues. Our law provides that an issue included in the statement of questions involved is waived when the appellant fails to develop an argument in support thereof. Accordingly, we will confine our review to the issues for which Wood has provided an argument. Furthermore, only five of these issues were included in, or fairly suggested by, Wood's Rule 1925(b) statement; thus our review is further limited to only these five issues (citations omitted).[15]

We too are confounded by the rambling allegations set forth in the petition, but note that those issues not previously raised in the appellate courts of the Commonwealth are procedurally defaulted and need not be considered here. Coleman v. Thompson, 501 U.S. 722,750 (1991).

Petitioner's first issue appears to challenge the manner in which his DNA was obtained, and the ineffectiveness of counsel in failing to adequately challenge this evidence in the pre-trial, trial, appeal and post-conviction proceedings.

Petitioner initially sets forth that he was originally convicted of a 1997 burglary, a crime which under then existing Pennsylvania law did not warrant the collection of DNA. Subsequently, he was reincarcerated as a parole violator, and in 2007 subjected to DNA collection pursuant to the then effective Pennsylvania DNA collection Act, 44 Pa.C.S.A. §§ 2301-2336. Since his arrest and subsequent convictions of the presently challenged crimes occurred as a result of the DNA evidence secured in 2007, the petitioner alleges that it should have been suppressed.

---

[14] See: Appx. at pp. 273-275.
[15] Id. at p.515.

At the hearing held on June 9, 2008, defense counsel moved to suppress the DNA evidence since at the time of the petitioner's original conviction Pennsylvania law did not authorize DNA collection from convicted burglars. Petitioner was subsequently arrested for a parole violation and defense counsel argued,

> He was in [custody] on a violation of his parole. He was not in on a new conviction. When his conviction occurred, burglary was not one of the enumerated offenses that required a DNA sample upon release… the dispute is that the original charge – at the time of the original charge, original incarceration and original parole, it was not a DNA-type charge.

In response, the prosecutor stated:

> He was arrested … on June 18, 2002, and was then detained around June 27, 2002, by the Pennsylvania Department of Probation and Parole. This was for a violation of a burglary conviction which occurred back in 1997. ..however, in the year 2002 the law was changed to require any person who served any term of incarceration on the effective date who was conviction of burglary shall not be released until that person had submitted a DNA sample. And so as of the date that the defendant entered the prison in 2002 he was required to submit a DNA sample prior to his release. (TT.6/9/02 pp. 11-12).

After reviewing the matter, the trial court concluded as a matter of law that the DNA evidence was not subject to suppression. Specifically citing to the holding of the Superior Court in Com. v. Derk, 895 A.2d 622, 627-628 (Pa.Super 2006), the court concluded that although the law had been changed since the petitioner's original release, the fact that he was reincarcerated on those charges at the time the new law took effect, required that his DNA be secured.[16] The Superior Court in reviewing the issue likewise concluded that as a procedural matter and not a punitive matter, the collection of the petitioner's DNA was appropriate and did not violate the *ex post facto* clause[17]

Initially, we observe that a suppression hearing was conducted by the trial court, and the argument was deemed meritless as a matter of law. In Stone v. Powell, 428 U.S. 465 464 (1976), the Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." See also: Marshal v. Hendricks, 307 F.3d 36, 82 (3d Cir.2002) cert. denied 538 U.S. 911 (2003). In

---

[16] Id. at pp.130-132.
[17] Id. at pp.280-281.

addition, the determination is a matter of state law and as such not subject to review here. Swarthout v. Cooke, 131 S.Ct. 859 (2011).

Wood also contends that counsel was ineffective for not thoroughly pursuing this issue. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Rainey v. Varner, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

Although counsel initially sought to challenge the DNA evidence, she cannot be faulted for failing to pursue a meritless claim. Real v. Shannon, 600 F.3d 302 (3d Cir. 2010). Thus, this portion of the claim likewise does not provide a basis for relief.

Petitioner's second, fourth and seventh claims appear to allege that he was targeted and prosecuted for improper motives. We concur with the respondents that although difficult to determine what petitioner is alleging, it would appear that he seeks to challenge the sufficiency of the evidence leading to his arrest and ultimate conviction. A federal habeas court looking to the sufficiency of the evidence must determine whether any rational fact-finder could have determined guilt beyond a reasonable doubt. Cavazos v. Smith, 132 S.Ct. 2 (2011); Jackson v. Virginia, 443 U.S. 307 (1979). In addition, a federal court may only disagree with a state court's finding on the sufficiency of the evidence if it determines that the decision was "objectively unreasonable." From the recitation above, there was more than sufficient evidence if

credited to justify the petitioner's apprehension and ultimate conviction. For this reason, the claim is meritless. Additionally, these conclusions of the state courts are also entitled to a presumption of correctness and despite the petitioner's unsupported arguments that his arrest and conviction were based on prosecutorial misconduct, he has failed to make a showing of any basis for rebutting this presumption. 28 U.S.C. 2254(e).

Petitioner also appears to be challenging the adequacy of counsel in addressing the sufficiency of the evidence. As set forth above, counsel cannot be faulted for failing to pursue a meritless claim. Real v. Shannon, supra.

In his third argument, petitioner contends that the trial court committed "egregious" errors, in failing to rule on motions *in-limine*, admissibility of the DNA evidence, making credibility determinations, failing to instruct the jury that it had to determine guilt beyond a reasonable doubt and denying "pre DNA testing". Petitioner offers no support for these allegations, and some are clearly rebutted by the record (TT420-422; App. p.125 ("after hearing and argument, the pre-trial motions were denied in their entirety, except for the request that the Commonwealth not use the term 'East End rapist,'")). Not only was the motion to suppress the DNA evidence denied, but it was clearly the foundation of the prosecution. Additionally, any other similar matters which the petitioner is attempting to raise here in his rambling unsupported allegations are procedurally defaulted and need not be considered here. Coleman v. Thompson, supra.

Wood also contends that his four consecutive 20-40 year sentences were excessive. A state sentence is not a subject for habeas relief unless it exceeds the statutory maximum sentence. LaBoy v. Carroll, 437 F.Supp. 2d 260 ( D. Del.2006)(citing Relying v. Bozza, 330 U.S. 160, 166 (1947).

The record reveals that at CC200702982, the petitioner was convicted of three first degree felonies and one second degree felony as well as various misdemeanors; at CC 20071274, he was convicted of four first degree felonies and misdemeanors; at CC 200712475 he was convicted of two first degree felonies, one second degree felony and misdemeanors and at CC 20071247 he was convicted of four first degree felonies and various misdemeanors (Appx. pp. 123-125). Pennsylvania provides that the punishment for a first degree felony of up to twenty years imprisonment and up to ten years imprisonment for a second degree felony (18 Pa.C.S.A. § 1103). Thus, this sentence was not illegal.

Petitioner next alleges that the imposed sentence was grossly excessive. In reviewing this matter, the Superior Court citing Commonwealth v. Eline, 940 A.2d, 421, 435 (Pa.Super.2007) wrote:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, bias or ill-will…
>
> Section 9721(b) provides that the imposed sentence should be consistent not only with the rehabilitative needs of the defendant, but also with "the protection of the public" and "the gravity of the offense as it relates to the impact on the life of the victim and on the community …
>
> In sentencing Appellant, the trial court heard testimony from some of the victims, as well as their families, and considered the seriousness of Appellant's offense when determining the sentence. This is appropriate. Appellant, however, mischaracterizes the trial court's consideration as taking into account only the seriousness of the offense. The trial court specifically stated that it had the benefits of a pre-sentence investigation report N.T. 9/3/08 at 2. **See Commonwealth v. Boyer**, 856A.2d 149 (Pa.Super.2004)(where the sentencing judge has the benefit of a pre-sentence investigation report, it will be presumed he was aware of the relevant information regarding the defendant's character). With regard to the protection of the public, the Commonwealth informed the trial court that "[p]rotection of the public from this type of offender is a paramount government interest." N.T. 9/3/08 at 29. The trial court was aware of Appellant's extensive criminal history, heard Appellant's lack of remorse, considered the impact upon the victims, and stated its awareness of the sentencing guidelines. N.T. 9/3/08 at 30-32). Accordingly, we conclude the trial court did not improperly focus solely upon the seriousness of the offenses…
>
> Appellant's final specific sentencing claim is … a challenge to the trial court's imposition of consecutive, as opposed to concurrent sentences. In light of the fact Appellant is a serial rapist who broke into numerous victims' residence on different days in order to brutally rape them, we conclude Appellant has not presented a substantial question permitting our review, and therefore, we decline to address the issue further. **Commonwealth v. Mastromarino**, 2 A.3d 581 (Pa.Super. 2010)(where the aggregate sentence is neither grossly disparate to the defendant's conduct nor viscerally appears as unreasonable, a defendant seeking a volume discount because of his crimes does not present a substantial question)…[18]

---

[18] Id. at pp 295-289 (some citations and references omitted).

Having been convicted inter alia of thirteen first degree felonies, it cannot be concluded that the imposed sentence exceeded the statutory maximum nor that the trial court exceeded its authority in imposing consecutive sentences. Therefore, this allegation does not provide a basis for relief.

Wood next contends that he was denied the opportunity to confront the prosecution's forensic expert. Specifically, he appears to allege that a report issued by Pamela J. Call, a member of the Pennsylvania State Police forensic department was introduced as a trial exhibit although Ms. Call was never called to testify. Specifically, in her February 9, 2007 report she wrote "the DNA profile obtained from the sperm fraction from the semen stain from the scarf (item Q1M) was found to be consistent with the DNA profile of [Keith Wood]… This report is considered a preliminary report and may be used as probable cause to obtain a search warrant for blood/buccal sample from the offender."

The Sixth Amendment provides inter alia that "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him…" Wood now argues that he was denied the right to confront a Commonwealth's forensic witness. However, this is not true. At trial three qualified DNA experts testified that all suspect DNA was from the same person namely the petitioner, and that the odds of any other individual fitting the profile were one in 56 quintillion (TT. 271, ,323, 334, 338-339). These experts were subject to cross-examination. The report to which petitioner objects was merely used to provide probable cause for the prosecution. Thus, his right to confrontation was not violated, and this claim does not provide a basis for relief.

Woods also tries to establish a Batson v. Kentucky, 476 U.S. 79 (1986) claim. In Batson, the Court held that an Equal Protection violation occurs where jurors are excluded based solely on race. While there is no support in the record for petitioner's claims, he argues that there was only one African-American on the jury and one who served as an alternate and that he objected to his counsel's acceptance of one juror as well as some unexplained "conflict" of interest of his counsel. The record is devoid of any objection by the petitioner to the venire or selected panel (TT. 06/09/08). Additionally, the Superior Court concluded that these issues were procedurally defaulted and did not address them (Appx. 517-518). For this reason, they are likewise procedurally defaulted here. Coleman supra.

13

The petitioner's final argument is that his prosecution resulted from prosecutorial misconduct/vindictiveness again referring to the forensic report of Pamela J. Call who concluded initially that the perpetrator's DNA which had been collected from the victims could not be matched with any known DNA in their data base, but after receiving a DNA specimen from the petitioner, she concluded that the match was strong enough to support an affidavit of probable cause. This evidence was not the basis for the prosecution but rather merely demonstrated that petitioner's DNA sample was not in the data base at the time of the incidents. Furthermore, in light of the subsequent incontestable conclusions of three DNA experts after petitioner's DNA was secured the prosecutor had no choice but to proceed and prosecute petitioner. Once again, there is absolutely no support for the petitioner's contentions, they are meritless and do not provide any basis for relief here.

Because there is no demonstration that petitioner's conviction was secured in any matter contrary to federal law as determined by the Supreme Court nor involves an unreasonable application of that law, Wood is not entitled to relief here. Accordingly, his petition will be dismissed, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

Filed: April 15, 2016            s/ Robert C. Mitchell
                                                             United States Magistrate Judge